UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

JOHN DOES and JANE JONES, Individually,
and on behalf of their minor children
with disabilities,

                Plaintiffs,

   - against -

RICHARD P. MILLS, in his representative
capacity as the Commissioner of
Education of the State of New York and
REBECCA H. CORT, in her representative
capacity as Interim Deputy Commissioner
of the New York Office of Vocational and
Educational Services for Individuals
with Disabilities a/k/a VESID,

                Defendants.

----------------------------------------X

04 Civ. 2919 (RWS)

O P I N I O N

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4-19-05

A P P E A R A N C E S:

    MAYERSON & ASSOCIATES
    Attorneys for Plaintiffs
    330 West 38th Street, Suite 600
    New York, NY 10018
    By:  GARY S. MAYERSON, ESQ.
         Of Counsel

    HONORABLE ELIOT L. SPITZER
    Attorney General of the State of New York
    Attorneys for Defendants
    120 Broadway, 24th Floor
    New York, NY 10271
    By:  STEPHEN M. JACOBY, ESQ.
        DAVID B. DIAMOND, ESQ.
        Assistant Attorneys General
        Of Counsel

**Sweet, D.J.,**

Defendant Richard Mills, Commissioner of Education of the State of New York (the "Commissioner") and Rebecca H. Cort, Interim Deputy Commissioner of the New York Office of Vocational and Education Services for Individuals with Disabilities ("VESID"), (the "Deputy Commissioner") (collectively the "Defendants") have moved under Rules 12(b)(1),(2),(3) and 12(h)(2),(3), Fed. R. Civ. P., to dismiss the amended complaint (the "Amended Complaint") of John Does and Jane Does, unnamed parents of ten unnamed children alleged to have been diagnosed with autism spectrum disorder (the "Plaintiffs"). For the reasons set forth below, the motion is granted.

The Plaintiffs have brought an action, pursuant to 42 U.S.C. § 1983 et seq., to challenge the validity of newly adopted regulations of the Commissioner of the State Education Department (the "SED regulations") that prescribe new procedural requirements to ensure that impartial hearings are conducted in a timely manner pursuant to the Individuals with Disabilities Education Act of 1997 (the "IDEA statute"), 20 U.S.C. 1400 et seq., and its implementing regulations. The SED regulations at issue are as follows: 8 N.Y.C.R.R. §§ 200.5(i)(3)(xii)(g),[1] 200.5(i)(3)(xiii),[2] and

---

[1] Section 200.5(i)(3)(xii)(g) provides that the "impartial hearing officer may receive memoranda of law from the parties not to exceed 30 pages in length, with typed material in minimum 12-point type (footnotes minimum 10-point type) and not exceeding 6 1/2 by 9 1/2 inches on each page." 8 N.Y.C.R.R.

200.5(i)(4).[3]   Plaintiffs argue that these regulations violate federal and state law.   They seek declaratory relief, injunctive relief, attorneys' fees, and incidental costs and disbursements.

The Defendants urge dismissal of the Amended Complaint on grounds that Plaintiffs lack standing to challenge the SED regulations at issue, that the Plaintiffs have failed to state a cause of action, and that this Court should abstain from exercising its jurisdiction over this action.

The parties have presented significant issues affecting children afflicted with serious disabilities and the federal and state statutory regulations providing for their educational needs.

## Prior Proceedings

The Complaint was filed on April 15, 2004.   The Amended Complaint was filed July 15, 2004.   Pursuant to a briefing schedule

---

200.5(i)(3)(xii)(g).

[2] Section 200.5(i)(3)(xiii) provides that each party shall have "up to one day to present its case unless the impartial hearing officer determines that additional time is necessary for a full, fair disclosure of the facts required to arrive at a decision. Additional hearing days, if required, shall be scheduled on consecutive days wherever practicable."   8 N.Y.C.R.R. § 200.5(i)(3)(xiii).

[3] Section 200.5(i)(4) imposes a 45-day time limit (from the time a request for a hearing is received) for the impartial hearing officer to render a decision, and it enumerates limitations on an independent hearing officer's discretion to grant extensions of this time limit.

endorsed by the Court, the instant motion was filed on August 26, 2004, and it was heard and marked fully submitted on December 1, 2004.

## The Statutory and Regulatory Regimen

According to the Deputy Commissioner, the regulations at issue were adopted to ensure that the SED satisfies its obligations pursuant to the IDEA statute and its implementing regulations. (See February 2004 Letter from Cort to District Superintendents, et al.).

The following background on the IDEA is useful:

In 1975, Congress passed the Education for All Handicapped Children Act. The Act was passed based on findings that the special-education needs of over half of the children in the United States with disabilities were not being fully met. Specifically, Congress found that one million children with disabilities were entirely excluded from the public school system while others were allowed to participate but did not realize the full benefits of an education because their disabilities went undetected. Thus, by mandating a Free Appropriate Public Education ("FAPE") for all students with disabilities in the Least Restrictive Environment ("LRE") possible, Congress effectively required schools to fully incorporate students with disabilities into the public education system. The landmark legislation also gave students with disabilities and their parents unprecedented due process rights. The law included a requirement that school officials and parents jointly design an Individualized Education Program ("IEP") for each student requiring special-education. Since 1975, Congress has amended the statute several times. One of those amendments, enacted in 1990, gave the law a new name: the Individuals with Disabilities Education Act ("IDEA").

Allan G. Osborne, Jr., <u>Discipline of Special-Education Students Under the Individuals with Disabilities Education Act</u>, 9 Fordham Urb. L.J. 513, 513-514 (2001).


To qualify for federal funding provided pursuant to the IDEA statute, a state must demonstrate that it has policies and procedures in place to ensure that: (1) each child with disabilities is provided with a FAPE pursuant to an IEP, <u>see</u> 20 U.S.C. § 1412, and (2) that the parents of such children are provided with opportunities both for mediation and for an impartial hearing on "complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of" a FAPE. <u>See</u> 20 U.S.C. § 1415(b)(6).


The IDEA statute provides parents with the following rights with respect to any impartial hearing concerning the identification, evaluation, or educational placement of a child with disabilities: (1) to "be accompanied and advised by counsel and by individuals with special knowledge or training with respect to the problems of children with disabilities," 20 U.S.C. § 1415(h)(1); (2) to "present evidence and confront, cross-examine, and compel the attendance of witnesses," 20 U.S.C. § 1415(h)(2); and (3) to have a hearing record and to receive written findings of fact and a decision. <u>See</u> 20 U.S.C. § 1415(h)(3),(4). The IDEA is silent as to whether parents are entitled to attorney argument,

4

extensions of time, hearings of particular or unlimited length, or unfettered discretion by the Impartial Hearing Officer ("IHO") with respect to the extension of deadlines and time limits.

A parent "aggrieved" by an IHO decision may appeal to a second administrative level if available. See 20 U.S.C. § 1415(h). Upon exhaustion of administrative review, an appeal may be made to a state or federal court. 20 U.S.C. § 1415(i)(2)(A). Failure to exhaust administrative remedies under the IDEA prior to making such an appeal deprives a court of subject matter jurisdiction. See Polera v. Board of Educ. of Newburgh Enlarged City School Dist., 288 F.3d 478, 483 (2d Cir. 2002).

Regulations promulgated pursuant to the IDEA require that each State Education Authority ("SEA") periodically certify its compliance with the IDEA. See 34 C.F.R. § 300.110(a). Such regulations also incorporate the IDEA's recognition of parents' rights to be heard at an impartial hearing. See 34 C.F.R. § 300.509. These regulations also provide that hearings should be held "at a time and place that is reasonably convenient to the parents and child involved." 34 C.F.R. § 300.511(d). Finally, the regulations provide that the SEA shall ensure that a final decision is reached on a parental complaint no more than 45 days after receipt of a hearing request. See 34 C.F.R. § 300.511(a). An IHO "may grant specific extensions of time beyond [the 45 days] at the request of either party." 34 C.F.R. § 300.511(c).

New York State's implementation of the IDEA can be found in Article 89 (entitled "Children with Handicapping Conditions") of the New York Education Law. See N.Y. Educ. L. §§ 4401-4410-b. Article 89 provides, in pertinent part, that upon notice by a parent of a dispute, a local board of education must appoint an IHO "to hear the appeal and make a determination within such period of time as the commissioner by regulation shall determine." N.Y. Educ. L. § 4404(1). The IHO's determination can be appealed to a State Review Officer ("SRO"). See N.Y. Educ. L. § 4404(2); see also Engwiller v. Pine Plains Cent. School Dist., 110 F. Supp. 2d 236, 240 (S.D.N.Y. 2000).

SED has adopted regulations pursuant to the IDEA. See 8 N.Y.C.R.R. Part 200. Section 200.5(i)(4) of the SED regulations provides that "the impartial hearing officer shall render a decision . . . not later than 45 days after the receipt by the board of education of a request for a hearing or after the initiation of such a hearing by the board." 8 N.Y.C.R.R. § 200.5(i)(4). Section 200.5(i)(4)(i) provides that "[a]n impartial hearing officer may grant specific extensions of time . . . at the request of either the school district or the parent." 8 N.Y.C.R.R. § 200.5(i)(4)(i).

On February 23, 2004, the SED Board or Regents approved certain amendments to section 200.5 of the regulations, and these

6

amendments became effective on May 1, 2004.   These amendments
include the statutory provisions that are at issue in this case.

**The Complaint**

Plaintiffs are parents of ten children "diagnosed with
one variant or another of an autism spectrum disorder," each of
whom has an IEP and has requested a hearing.   (See Am. Compl. ¶¶
10, 14.)   The Amended Complaint does not specify the substance,
procedure, or status of such hearings.   Plaintiffs reside in
unspecified counties in the Southern District of New York.   (See
Am. Compl. ¶ 11.)   No information has been provided as to the
school districts of the children at issue.

Plaintiffs assert jurisdiction under 42 U.S.C. § 1983 et
seq., the Rehabilitation Act, 29 U.S.C. § 794 et seq., and 28
U.S.C. § 1331.   (See Am. Compl. ¶ 10.)   According to the Plain-
tiffs, the challenged regulations violate the Fifth and Fourteenth
Amendments, the IDEA, federal IDEA regulations, the Rehabilitation
Act, prior SED regulations, the State Code of Judicial Conduct, and
state public policy.   (See Am. Compl. ¶¶ 1, 2, 4, 5, 28, 44, 45,
47.)

The gravamen of the Amended Complaint is that the
challenged SED regulations violate the rights of parents of
children with disabilities to be heard and to have a full and fair

opportunity to proffer evidence and to examine and cross-examine witnesses before an IHO. Furthermore, Plaintiffs argue that the challenged SED regulations discourage the exercise of their rights, virtually guarantee numerous hearings in cases that might have been settled, set more restrictive procedural standards than the IDEA and state and federal constitutions; and violate constitutional due process and equal protection rights. (See Am. Compl. ¶¶ 1, 2, 4, 5, 15, 18, 20, 22, 23, 41, 44, 45, 47.)

With respect to section 200.5(i)(3)(xiii), the Plaintiffs argue that the regulation is unnecessary; not in federal statutes; unprecedented in state regulations; "presumptively restricts" each side to one day for presentation of its case unless the IHO exercises discretion to extend that time; does not take into account that "[m]ost" hearings, including those concerning children with autism, can require more than two days; may "chill and discourage" parents from asking for more than one day; and puts pressure on IHOs and compromises their impartiality. (See Am. Compl. ¶¶ 19, 20, 24-26, 27, 31.) Plaintiffs also contend that the one-day limit is vague because they believe "day" is not defined. (See Am. Compl. ¶ 31.)

Plaintiffs challenge that part of Section 200.5(i)(4) that provides that "absent a compelling reason or a specific showing of substantial hardship, a request for an extension shall

not be granted because of . . . settlement discussions between the parties." 8 N.Y.C.R.R. § 200.5(i)(4)(iii). Plaintiffs argue that:

> even if the parties, their attorneys, and the hearing officer all agree that the matter is being recommended for settlement and the hearing should be adjourned to allow the recommended settlement to become approved, documented, and effectuated, the anticipated settlement ... is [not] ... sufficient grounds to adjourn the case.

(Am. Compl. ¶ 33.)

Plaintiffs also contend the regulation is impractical because it takes school districts time to approve settlements, and during the pendency of such approval processes, IHOs will not have discretion "to manage their calendars and caseloads." (Am. Compl. ¶¶ 35-37. Plaintiffs also allege the word "compelling" is "impermissibly vague" without "objective definition." (Am. Compl. ¶ 34.)

The Plaintiffs do not challenge an IHO's discretion whether to receive memoranda of law from the parties to an impartial hearing. However, the Plaintiffs do challenge the 30-page limit for such memoranda imposed by 8 N.Y.C.R.R. § 200.5(i)-(3)(xii)(g). Plaintiffs argue that this page restriction is vague because the regulation does not "define whether it concerns a pre-hearing memorandum, a post-hearing memorandum in the nature of proposed findings of fact and conclusions of law, or both," and "does not indicate whether . . . the page limitation is applicable

to . . . a table of contents or table of authorities." (Am. Compl. ¶ 38.) The Plaintiffs also challenge the lack of IHO discretion to relax the 30-page limit if necessary. (See Am. Compl. ¶¶ 39, 40.)

## Discussion

### A.   Standard Of Review

In deciding a motion for judgment on the pleadings, the court is generally limited to considering the factual allegations set forth in the complaint and corresponding answer. See Fed. R. Civ. P. 12(c). A party is entitled to judgment on the pleadings only if it is clear that no material issues of fact remain to be resolved and that he or she is entitled to judgment as a matter of law. See Juster Assocs. v. City of Rutland, 901 F.2d 266, 269 (2d Cir. 1990); Rosado v. Barnhart, 290 F. Supp. 2d 431, 435 (S.D.N.Y. 2003).

In connection with a Rule 12 motion, "'the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" York v. Ass'n of Bar of City of New York, 286 F.3d 122, 125 (2d Cir.) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), cert. denied, 537 U.S. 1089 (2002). In other words, "'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be

offered in support thereof.'" Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)).

"[T]he court should not dismiss the complaint [pursuant to Rule 12(b)(6)] 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

## B.    The Plaintiffs Have Standing

According to the Defendants, the Plaintiffs neither satisfy the Article III "case or controversy" requirements nor present a ripe, prudentially justiciable controversy because their allegations have not alleged that they have "suffered an injury in fact," that is, an "invasion of a legally protected interest" that is both "concrete and particularized" and actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted).  Defendants also argue that the Plaintiffs have not alleged "a causal connection between the [alleged] injury and the conduct complained of."  Id.  That is, Defendants assert that Plaintiffs have failed to allege an injury fairly traceable "to the

challenged action of the defendant, and not . . . [resulting] from the independent action of some third party not before the court." Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 41-42 (1976). Finally, Defendants argue that Plaintiffs have failed to allege that it is "'likely,'" as opposed to "being merely 'speculative,' that their alleged injury will be redressed by a favorable decision." Lujan, 504 U.S. at 560 (quoting Simon, 426 U.S. at 38, 43).

Contrary to the Defendants' arguments, the Plaintiffs have standing. The Plaintiffs have alleged a loss and deprivation of "due process" hearing entitlements guaranteed by the IDEA and the U.S. Constitution. The invasion of legal rights is an actual injury creating standing. See Warth v. Seldin, 422 U.S. 490, 500 (1975).

The Defendants' May 1, 2004 implementation of certain of the new state regulations is alleged to deprive the Plaintiffs of the kind of full and fair due process hearing that Plaintiffs had prior to May 1, 2004, and which they allege is guaranteed to them under the federal IDEA statute and the Rehabilitation Act. There is a sufficiently direct relationship between the injury alleged and the new regulations being challenged to constitute a traceable connection between the threatened or actual injury and the "putatively illegal action." Simon, 426 U.S. at 41.

Finally, a declaratory judgment and injunction would remedy the injuries that the Plaintiffs allegedly have suffered as a result of the new regulations.

## C.  **Abstention Is Appropriate**

Under Younger v. Harris, 401 U.S. 37 (1971), federal courts are generally required "to abstain from taking jurisdiction over federal . . . claims that involve or call into question ongoing state proceedings." Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) (citing Younger, 401 U.S. at 43-44). Younger abstention is required when three conditions are met: "(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." Diamond "D", 282 F. 3d at 198 (quoting Grieve v. Tamerin, 269 F.3d 149, 152 (2d Cir. 2001)).

The Younger doctrine applies whether the ongoing state proceedings are civil or administrative. See Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc., 477 U.S. 619, 629 (1986); Spargo v. N.Y.S. Comm'n on Judicial Conduct, 351 F.3d 65, 75 (2d Cir. 2003), cert. denied, 124 S.Ct. 2812 (2004); Christ the King Regional High School v. Culvert, 815 F.2d 219, 223-24 (2d Cir.), cert. denied, 484 U.S. 830 (1987).  "[W]hen [the] Younger

13

[abstention doctrine] applies, abstention is mandatory and its application deprives the federal court of jurisdiction in the matter." Diamond "D", 282 F.3d at 197. "[A]ny uncertainties as to the scope of state proceedings or availability of state remedies are generally resolved in favor of abstention." Spargo, 351 F.3d at 78 (citation omitted).

Here, there are ongoing impartial hearings which were requested by the Plaintiffs. (See Am. Compl. ¶ 14.) These hearings involving important state interests (public education, implementation of state legislation through state regulation, IHO certification, guidance for IHO discretion, access to federal funding, and SED efforts to assure compliance with federal regulations and to respond appropriately to past complaints of delay). The Plaintiffs have an "adequate opportunity for judicial review of [their] constitutional [or federal statutory or regulatory] claims during or after the [state] proceeding." Christ The King, 815 F.2d at 224. The administrative proceedings could resolve Plaintiffs' individual concerns on state law grounds based on individualized circumstances and the IHO's, SRO's, or state court's interpretation of the regulations. Furthermore, SRO and state court review can address issues of whether individual proceedings comply with federal and state statutory and regulatory law.

Based on the foregoing, <u>Younger</u> abstention is appropri-

ate.


Abstention is also appropriate under <u>Burford v. Sun Oil</u>

<u>Co.</u>, 319 U.S. 315 (1943). As the Second Circuit has stated:


> <u>Burford</u> abstention is proper in order to "avoid resolving
> difficult state law issues involving important public
> policies or avoid interfering with state efforts to
> maintain a coherent policy in an area of comprehensive
> regulation or administration." <u>American Disposal Servs.,</u>
> <u>Inc. v. O'Brien</u>, 839 F.2d 84, 87 (2d Cir. 1988); <u>see</u> <u>also</u>
> [<u>Bethphage Lutheran Service, Inc. v. Weicker</u>, 965 F.2d
> 1239 (2d Cir., 1992)]. ... [T]he court looks to several
> factors to determine the applicability of <u>Burford</u> absten-
> tion, including: "[1] the degree of specificity of the
> state regulatory scheme, [2] the necessity of discretion-
> ary interpretation of state statutes, and [3] whether the
> subject matter of the litigation is traditionally one of
> state concern." <u>Bethphage</u>, 965 F.2d at 1243 (citation
> omitted).


<u>Planned Parenthood of Dutchess-Ulster, Inc. v. Steinhaus</u>, 60 F.3d

122, 127 (2d Cir. 1995). The subject matter of this litigation is

a complex state administrative structure that requires various

levels of specialized administrative review and numerous

interrelated regulatory sections providing procedural guidance.

<u>See</u> <u>id.</u> However, the Plaintiffs argue that <u>Burford</u> is inapposite

because the state regulations at issue seek to implement federal

statutory entitlements and because, they allege, certain of the

regulations are not specific but unconstitutionally vague.

However, the regulations at issue involve state statutory entitle-

ments in an area of traditional state concern. <u>See</u> <u>Rogers v.</u>

15

Assoc. for the Help of Retarded Children, Inc., 308 N.Y. 126, 132, 123 N.E.2d 806, 809 (1954) (stating that "education of all children, however handicapped," has long been a matter of "strong public policy of the State"). Furthermore, the state statutory/regulatory scheme at issue here is specific, and this case raises issues that necessitate discretionary interpretation of state statutes. Finally, the Plaintiffs' challenge to certain words within the entire regulatory and administrative systems does not diminish the system's overall specificity.

Abstention is also appropriate here under Railroad Comm'n of Texas v. Pullman, Co., 312 U.S. 496 (1941) to avoid unnecessary resolution of federal constitutional, statutory and regulatory issues that might well be mooted by future state construction of the regulations. Id. at 498-501. The dispute here, which involves difficult questions of how to best serve children with disabilities and how to curb inefficient use of SED administrative resources, implicates "sensitive area[s] of social policy upon which the federal courts ought not to enter." Id. at 498.

The Plaintiffs have initiated individual hearings, and they have the right to appeal disputed IHO ruling as provided by state law. Abstention here will avoid the interpretation of new state regulations by the federal court without the benefit of state determinations. Id. at 500; Moore v. Sims, 442 U.S. 415, 428 (1979).

Based on the foregoing, abstention is appropriate.

### D. The Amended Complaint Fails To State A Cause Of Action

Alternatively, should abstention be deemed inappropriate, the Amended Complaint fails as a matter of law.

### 1. No Federal Statutory Violation Has Been Stated

To the extent that the Plaintiffs claim that the SED regulations at issue violate the IDEA and Section 504 of the Rehabilitation Act, the claim fails because there are no provisions of the IDEA or the Rehabilitation Act which prohibit the application of SED's new regulations in impartial hearings.

The IDEA and its implementing regulations provide procedural safeguards for impartial hearings. Pursuant to the IDEA statute, parties to an impartial hearing are accorded:

(1)  the right to be accompanied and advised by counsel and by individuals with special knowledge or training with respect to the problems of children with disabilities;

(2)  the right to present evidence and confront, cross-examine, and compel the attendance of witnesses;

(3)  the right to a written ... verbatim record of such hearing; and

(4)  the right to written ... findings of fact and decisions.

17

20 U.S.C. § 1415(h).

The IDEA's implementing regulations set forth the same procedural safeguards and also additional safeguards including, among other things, restrictions on the introduction of previously undisclosed evidence. See 34 C.F.R. § 300.509. The pertinent implementing regulation of the Rehabilitation Act requires:

> a system of procedural safeguards that includes notice, an opportunity for the parents or guardian of the person to examine relevant records, an impartial hearing with opportunity for participation by the person's parents or guardian and representation by counsel, and a review procedure. Compliance with the procedural safeguards of [the IDEA] is one means of meeting this requirement. [Emphasis supplied].

34 C.F.R. § 104.36.

As described above, Plaintiffs here challenge the amendments now codified at 8 N.Y.C.R.R. § 200.5(i) concerning page limitations for memoranda, time limitations for hearings, and limitations on extensions of impartial hearings. Plaintiffs have not set forth any specific provisions of the IDEA or the Rehabilitation Act that is violated by the new regulations.

Section 504 of the Rehabilitation Act of 1973 provides in pertinent part that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of,

18

or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794. The Plaintiffs have not alleged that their children were treated differently from non-disabled students (and their parents) based on disability. Therefore, they fail to state a claim for a violation of the Rehabilitation Act. See Doe v. Pfrommer, 148 F.3d 73, 83-84 (2d Cir. 1998); P.C. v. McLaughlin, 913 F.2d 1033, 1041 (2d Cir. 1990).

The IDEA does not contain any express language prohibiting states from regulating impartial hearing procedures or any other matters related to the administration of the IDEA. The same is true with respect to the Rehabilitation Act. In fact, the IDEA contemplates concurrent federal and state regulation of matters related to the efficient, expeditious administration of IDEA benefits. Similarly, the relevant Rehabilitation Act regulation explicitly provides for state regulation of, and the use of IDEA procedures in, impartial hearings. See 34 C.F.R. § 104.36.

In the alternative, the Plaintiffs argue that the new SED regulations are preempted by the IDEA and the Rehabilitation Act. (See Am Compl. ¶ 47.) Such preemption arguments have been rejected by other courts of this circuit based on the absence of express language in the IDEA prohibiting states from regulating in areas within its purview and the "elaborate interrelation of state and federal regulation" which it contemplates. E.S. ex rel. Mr. S. v.

19

Ashford Bd. of Educ., Civ. No. 397CV620 (PCD), 1998 U.S. Dist. LEXIS 23045, at *11-13 (D. Conn. Aug. 17, 1998) (rejecting argument that IDEA preempts state statute barring presentation at impartial hearing of issue not previously presented to IEP planning entity); see also Lillbask ex rel. Mauclaire v. Sergi, 117 F. Supp. 2d 182, 189-90 (D. Conn. 2000) (same). As concluded by these authorities, the regulations are not preempted.

### 2. No Federal Constitutional Violation Has Been Stated

The Plaintiffs have also alleged that the SED's new regulations violate the procedural due process guarantee of the Fourteenth Amendment. The Second Circuit has stated that the elements of a procedural due process claim are as follows: (1) that the plaintiff possessed a constitutionally protected interest, (2) that such interest was deprived as a result of government action, (3) and that the deprivation occurred without constitutionally adequate pre- or post-deprivation process. N.Y. State NOW v. Pataki, 261 F.3d 156, 163 (2d Cir. 2001) (citing Logan v. Zimmerman Brush Co., [455 U.S. 422, 428] (1982)).

Even assuming for the sake of argument (1) that the Plaintiffs possess a constitutionally protected interest in a FAPE under the IDEA and (2) that the SED statutory/regulatory scheme can have the effect of depriving Plaintiffs of such interest, Plaintiffs have nonetheless failed to allege the third element of

a procedural due process claim. That is, they have failed to allege facts showing that as a result of the SED regulations at issue, such deprivation occurred without adequate process.

The hearing rights provided by the IDEA, as currently implements by SED, are at least as extensive as those the Supreme Court has previously determined to be constitutionally adequate. See Goldberg v. Kelly, 397 U.S. 254, 267 (1970) (stating that in the context of the termination of public assistance benefits, due process requires a pre-termination hearing with rights to representation, oral presentation, confrontation of witnesses, and a written decision).

In the context of administrative hearings, such as the ones at issue in this case, the Supreme Court has held that procedures less extensive than those normally utilized in a full adversarial hearing satisfy procedural due process requirements. See Matthews v. Eldridge, 424 U.S. 319, 340 (1976) (holding that post-deprivation, non-adversarial hearing with right to representation satisfied due process in termination of Social Security disability benefits); see also Barry v. Barchi, 443 U.S. 55, 65 (1979) (stating that lack of formal hearing prior to suspension of a horse trainer's license did not violate due process where trainer was given "more than one opportunity to present his side of the story to the State's investigators"); Bell v. Burson, 402 U.S. 535, 540 (1971) (stating that for revocation of driver's license, due

process required only pre-revocation probable cause hearing as to licensee's fault which "need not take the form of a full adjudication of the question of liability").

In addition, in the context of IDEA impartial hearings, numerous federal courts have held that constitutional due process requirements are satisfied where, as here, the parties are provided the procedural safeguards found in the IDEA and its implementing regulations. See, e.g., BD v. DeBuono, 130 F. Supp. 2d 401, 434-35 (S.D.N.Y. 2001); Wenger v. Canastota Cent. Sch. Dist., 979 F. Supp. 147, 153 (N.D.N.Y. 1997), aff'd, 208 F.3d 204 (2d Cir. 2000).

Based on the foregoing, it is determined that the procedures set forth in the IDEA and its implementing regulations afford Plaintiffs all of the constitutional due process to which they are entitled.

In addition, Plaintiffs' allegations concerning 8 N.Y.C.R.R. § 220.5(i)(3)(xii)(g), which imposes a 30-page limit on legal memoranda that may be received by an IHO, fail to state a procedural due process claim. Legal memoranda of a particular length are not a necessary requirement of due process. See Goldberg, 397 U.S. at 269. Due process challenges based on page limits have been dismissed by federal courts. See, e.g., Watts v. Thompson, 116 F.3d 220, 223-24 (7th Cir. 1997) (page limit on memoranda of law complies with due process); Cunningham v. Becker,

96 F. Supp. 2d 396, 373-74 (D. Del. 2000), aff'd, 275 F.3d 34 (3d Cir. 2001).

Nor do Plaintiffs state a procedural due process claim with respect to 8 N.Y.C.R.R. § 200.5(i)(3)(xiii), which states that "[e]ach party shall have up to one day to present its case." The IDEA and the pertinent regulation of the Rehabilitation Act, see 34 C.F.R. § 103.46, require only "a hearing." Moreover, an IHO is required to make a determination in response to a party's request for more time to present his or her case, and nothing in 8 N.Y.C.R.R. § 200.5(i)(3)(xiii) prevents an IHO from exercising the discretion granted by the regulation to do so.

Finally, the provisions of 8 N.Y.C.R.R. § 200.5(i)(4)(iii) do not, as Plaintiffs have alleged, abridge a due process right to receive an extension to effectuate a settlement. Procedural due process guarantees parties notice and an opportunity to be heard at a meaningful time and in a meaningful manner. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950); Armstrong v. Manzo, 380 U.S. 545, 552 (1965). They do not guarantee the opportunity to extend the hearing process in order to implement a settlement. Furthermore, it should be noted that the regulation expressly permits extensions for a compelling reason or substantial hardship.

Because the IDEA provides an adequate review process for Plaintiffs to obtain redress of any unconstitutional application of the SED's new regulations, the Plaintiffs' due process claim also fail. See NOW, 261 F.3d at 168 (stating that there is no denial of due process based on acts of state agency when adequate state procedures are available to correct such errors); Liotta v. Rent Guidelines Bd., 547 F. Supp. 800, 802 (S.D.N.Y. 1982) (stating that Article 78 proceedings to review administrative decision satisfy due process); see also DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 597-98 (3d Cir. 1995) (stating that "a state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error"), abrogated on other grounds, UA Theatre Circuit, Inc., v. Township of Warrington, 316 F.3d 392 (3d Cir. 2003).

Pursuant to 34 C.F.R. 300.510(b) an SRO reviewing an IHO's determination after an impartial hearing must, among other things, "[e]nsure that the procedures at the hearing were consistent with the requirements of due process."[4] 34 C.F.R. § 300.510(b)(2)(iii). This procedure ensures that the new regulations will be subject to thorough review for compliance with constitutional due process.

---

[4] The SRO must also: (i) [e]xamine the entire hearing record; ... (iii) [s]eek additional evidence if necessary[]; (iv) [a]fford the parties an opportunity for oral or written argument[]; (v) [m]ake an independent decision[]; and (vi) [g]ive a copy of the written ... findings of fact and decisions to the parties. 34 C.F.R. 300.510(b)(2)(i), (b)(2)(iii)-(vi).

The Plaintiffs' equal protection claim has been abandoned (Pls.' Mem. in Opp. Mot. Dismiss, at 2 n.2). It is therefore dismissed without prejudice.

Void-for-vagueness challenges such as those advanced by the Plaintiffs are usually directed at criminal statutes and civil provisions which prohibit future individual conduct, particularly conduct protected by the First Amendment. <u>Boutilier v. Immigration and Naturalization Service</u>, 363 F.2d 488, 495 (2d Cir. 1966), <u>aff'd</u>, 387 U.S. 118 (1967). The regulations here are not criminal laws. They do not proscribe conduct protected by the First Amendment. Nor do they impose civil sanctions for certain types of conduct. Therefore, the void-for-vagueness doctrine is not applicable. <u>Boutilier</u>, 363 F.2d at 495.

Moreover, the terms at issue -- <u>e.g.</u>, "day" and "compelling reason" -- are not vague. Sectin 200.5 assigns no specific definition to the term "day." The term "compelling reason" is defined negatively. <u>See</u> 8 N.Y.C.R.R. § 200.5(i)(4)(iii) (stating that "[a]greement of the parties is not a sufficient basis for granting an extension," and therefore would not constitute a compelling reason). It is the Defendants' interpretation, which presumably will be adopted, that if there is (1) either an agreement in principle to settle or present, active settlement discussions and (2) no adverse effect of the extension on the "child's educational interest or well-being," <u>see</u> 8 N.Y.C.R.R. §

25

200.5(i)(4)(ii)(a), it is within an IHO's discretion to permit an extension.

To the extent that the terms "day" and "compelling reason" are not defined by the regulations themselves, they are to be read according to their plain-language meanings. See, e.g., Hobbs v. County of Westchester 397 F.3d 133, 146 (2d Cir. 2005) (stating that "it is a general rule of statutory construction that, absent a definition in the statute, courts construe words in their plain and ordinary sense") (quoting Weinberg v. City of Chicago, 310 F.3d 1029, 1042 (7th Cir. 2002).

This rule of construction applies with equal force to those statutory provisions concerning page limits for submissions in connection with impartial hearings.

## E. The State Law Claims Against The State Are Dismissed

The Plaintiffs do not have any viable federal claims against the Defendants. "In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." Marcus v. AT & T Corp., 138 F.3d 46, 57 (2d Cir. 1998); see also Pitchell v. Callan, 13 F.3d 545, 549 (2d Cir. 1994) (noting that "it is axiomatic that a court should decline to exercise jurisdiction over state-law claims when it dismisses the federal

claims ..."); <u>Bernstein v. Misk</u>, 948 F. Supp. 228, 243 (E.D.N.Y. 1997). Therefore, the state law claims are dismissed.

## Conclusion

Based on the foregoing, the Amended Complaint is dismissed. Leave is granted to replead within twenty (20) days.


It is so ordered.


New York, NY
April     15     , 2005

ROBERT W. SWEET
U.S.D.J.

27